Good morning, and may it please the Court, I'm Lila Silverstein for Mark Phillips. There are several issues in this case, so I'd like to rest on the briefs for a couple of them and today talk about the insufficiency of the evidence on the mail fraud count as well as the vague and overbroad condition of supervised release, and then I'll also address the government's cross-appeal. As for the mail fraud count, we better wait and see if that's something that requires our attention. Then you can start over. Stacy, why don't you put her clock back at 20? Okay. Starting with the mail fraud count, the conviction should be reversed because the government failed to prove that the mailing of a watch from Feel Good Watches to Mark Phillips So if we agree with you on that, you lose on your money laundering argument, yes? Well, the way I would phrase it is, if you agree with the government on the money laundering argument, then they lose on the mail fraud argument. All right. But there is that tension between There is that tension, yes, Your Honor. The point being, the mailing of a watch from Feel Good Watches to Mark Phillips was not for the purpose of executing the scheme to defraud mod systems. In fact, as the government implicitly concedes throughout its brief, the opposite is true. Mr. Phillips did not have a watch mailed for the purpose of executing a scheme to defraud mod systems. Rather, he executed a scheme to defraud mod systems for the purpose of paying for that watch. And the fraud he executed The question was whether a rational jury could conclude that he gets an expensive item mailed to him with the idea that he's going to loot or dip into the funds of the corporation to pay for it. Yes, a rational jury could make that finding, but that's insufficient as a matter of law to convict Mr. Phillips of mail fraud because under the statute, the mailing must be for the purpose of executing the scheme to defraud. And as the government put it in a different part of its brief, this mailing was a wholly separate transaction. It was not for the purpose of executing the scheme to defraud mod systems. It did not further the scheme to defraud mod systems. And the success of the scheme And why would it not, if I could play devil's advocate with you, why would it not further a scheme to defraud if he had in mind that he's going to order an expensive $30,000 watch and let it be mailed to him and then he's going to find ways to get the money for it out of the corporation? Well, because the Feelgood Watches was not the victim of the fraud. Feelgood Watches mailed Mr. Phillips a watch and Mr. Phillips paid Feelgood Watches for the watch. So they had nothing to do with it. The scheme to defraud mod systems, or I should say the jury was entitled to find, that Mr. Phillips defrauded mod systems by lying to Ken Gordon to convince him to transfer funds out of Maud's account and into an account controlled by Mr. Phillips. But that was the fraud. And as we know, Mr. Phillips was punished for that fraud in Count 1. It was wire fraud, and we have not challenged the wire fraud convictions. There were four of them, and Count 1 dealt with this money used to pay for the watch. But the fraud was wire fraud, not mail fraud, because the success of the scheme to defraud mod systems did not depend in any way on the mailing of the watch. So we would ask the conviction on Count 5 be reversed. Is your theory true even if he would have never had the watch mailed if he wasn't planning to get the company to pay for it? If he had never had the watch mailed, he would still be guilty of the wire fraud, Your Honor. I mean, we haven't challenged that. The jury found that he lied to Ken Gordon to get him to transfer the funds, and that is wire fraud. And it's just that occurred irrespective of the mailing of any watch. So whether a watch was mailed or not, this wire fraud was accomplished, and it was simply no part of the scheme to defraud Maud's systems, and that's why. It wasn't part of the execution of the scheme, which is what the statute requires. Yes, thank you, Your Honor. Thank you. Correct. Now, Mr. Phillips also challenges one of the conditions of supervised release, specifically condition number eight is vague and overbroad and should be stricken. The condition states, the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered. Now the problem is there are many, many places in Seattle where controlled substances are illegally used or sold. When I think about what would happen if this condition were imposed upon me, I would probably be violating it every day just going about my law-abiding life. When I wait for a bus across the street from my office at 3rd and Pine, I am probably violating this condition because that corner is a known open-air drug market. When I take my dog to the off-leash park in Belltown, I am probably violating this condition because that park is a known open-air drug market. When I take an afternoon break and look at the view from Victor Steinbrook Park, which is right next to Pike Place Market, I am probably violating this condition because even... Of course, you're not under supervised release as far as I'm aware. I'm not, but imagine Mr. Phillips trying to do all of these things. If he worked in my building, he could not take his bus every evening. He did used to live in Belltown, and he would not be able to take his dog to that off-leash park. He would not be able to go to Victor Steinbrook Park. There are many, many places. How should this be drafted? Well, Your Honor, in looking back over the judgment and sentence, it seems that the purpose of this condition is already covered by Conditions 7 and 9. It could be drafted to simply say the defendant may not illegally use, distribute, administer, possess controlled substances, et cetera, but I believe that's already in Conditions 7 or 9. It could also say the defendant may not frequent the homes of known drug dealers. That would be very specific and understandable and not overbroad. But as I said, I think Conditions 7 and 9 already cover those things, and so Condition 8 is simply unnecessary. Condition 7 says the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, et cetera, et cetera. So that covers that. And then Number 9 says the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, et cetera, et cetera. So I think those two conditions cover the purposes at which Condition 8 is aimed, but those conditions are not vague and overbroad. So Condition 8 could simply be stricken and it wouldn't need to be replaced because Conditions 7 and 9 are already there. Why isn't, on your theory, why isn't Number 9 equally overbroad? You go down that bus stop where you know there are a lot of drug users and you're associating with them, right? At your peril, you say hello. I mean, isn't that the problem with your argument in some ways is that it doesn't ask that these admittedly broad terms be given a rule of reason, an application. You want to, in effect, say that it's void on its face because it's overbroad, but that applies to virtually all those, many of those terms. Well, I don't think so. I mean, this Court has construed the term associate not to include incidental contact. So if I wait, if Mr. Phillips waits at the bus stop every night and once he happens to say hello to a person that he knows was convicted of a felony, first of all, there's a knowing, there's a mens rea in that one that helps. But if he doesn't know they're engaged in criminal activity and he says hello once, that would not violate this condition. But the problem is that place is a place every time. So it's not incidental contact if he has to wait at that bus stop every night. He's not going to say hello to that person every night. So that's, I guess, the distinction I would draw there. Place is so broad that it can include cities, towns, neighborhoods, corners, homes, et cetera. And any place you frequent, you go to regularly or have to be in regularly, may have people using drugs. You know, another thing worth noting. Can you point to any actual case where this has been applied in the kinds of situations you're hypothesizing? I could not find any case involving this condition at all, which frankly floored me, because it jumps out at me as being overbroad and vague. There was no objection. There was no objection, Your Honor. So this is plain air review. But let me point out also that Washington. May I just follow up for a moment? If he were actually charged with violating supervised release by taking his dog to the leash-free park, could he raise this then? Well, he could. But the problem is he needs to have notice when he gets out as to where he can and cannot go. So he can't wait and just see, well, if I go to the dog park, will I be thrown in jail? So if we were to read into this a mens rea requirement, which would not be an unusual thing for a court to do, then all he would have to do is call up his probation officer in advance and say, can I go here, can I go there? And if the probation officer said yes, then he would lack the mens rea to be violative of the condition. Well, I don't know that that would solve the overbreadth problem, Your Honor, because so many places are places where people are using or selling drugs. I don't know. I'm from New York. It never happens. Surely you can relate. You know, I just think he would have to call his probation officer every day. And what I was going to say is you may or may not know that marijuana is practically legal in Washington State. It's already legal for medicinal purposes. There's an initiative on the ballot this fall to legalize it altogether. It will be taxed and regulated just like alcohol. It's already difficult to be in some areas without smelling marijuana, and you're on notice, the mens rea is satisfied if you can smell it. But if that initiative passes this fall, it will be extremely difficult, not to frequent places where people are in Washington legally smoking marijuana, but it would be violating this federal condition. You put on your how-can-I-narrow-it hat rather than how-can-I-get-it-eliminated hat, and, you know, you just had to try to narrow the provision. Can you suggest a way that places that are frequented by drug users could be precluded legitimately in a supervisory condition? That is, how would you narrow the language to pick up on Judge Schroeder's question? I would say the defendant may not frequent the homes of known drug dealers, something like that. But the level of granularity on the word place has to be very narrow, so home or something like that. Once you get into outdoor areas, I think it's too difficult, and the government acknowledges that this condition here includes open-air drug markets. Open-air drug markets are everywhere, so I don't think it can include that. But you could prohibit defendants from going to the homes of known drug users or drug dealers, something like that would narrow it sufficiently, Your Honor. So moving on to the cross-appeal issue, the district court committed no error in denying forfeiture, and we'd like to ask the court to affirm that ruling. At the time of sentencing, Mr. Phillips had already relinquished all of the proceeds of these crimes. In fact, he had relinquished far more than $100,000, so there was simply no criminally-derived property remaining to be forfeited. Section 981 limits the property subject to forfeiture to that which is traceable to a specified unlawful activity, and this court has recognized that the purpose of the statute is to ensure that defendants disgorge their ill-gotten gains. Well, Mr. Phillips has already done that. He's already disgorged himself of all of the proceeds of these wire frauds. Furthermore, the district court correctly ruled that there were too many procedural problems with forfeiture in this case because the Fifth and Sixth Amendments require the jury to find every fact essential to forfeiture beyond a reasonable doubt, but that didn't happen here. Now, in Shyrock, this court held that the Fifth and Sixth Amendments do not apply to forfeiture, but that was almost 10 years ago. There's obviously been a plethora of case law from the Supreme Court since then, culminating in this year's Southern Union decision, clarifying that every fact essential to punishment must be found by a jury beyond a reasonable doubt. There can be no doubt that forfeiture is punishment. Both this court and the Supreme Court have so held. What is it that would have to be found by the jury here? Well, what would have to be found is the amount subject to forfeiture, Your Honor. The government's argument is that the district court judge should have found the amount subject to forfeiture, should have found that there were $100,000 in proceeds from these wire frauds. But under Southern Union, that's incorrect. You know, Southern Union held that the rule of apprendi and its progeny applies not just to terms of incarceration, as the government had argued, but also to monetary punishment, specifically fines in that case. But the same principle applies to forfeiture, because like fines, forfeiture is punishment, and forfeiture cannot be imposed absent that additional factual finding. How would you instruct the jury here? I would instruct the jury that, well, I mean, the same way you would for fines. You could simply add it to the instruction for the wire fraud count itself. Instead of, you know, just add the amount in there like you would for, I don't know, in state court for first-degree theft, second-degree theft, third-degree theft, that sort of thing, you have the amount in the instructions for the crime. It could be in there, or it could be a separate instruction, or it could be in the verdict form. You know, did the defendant derive $100,000 from the wire frauds at issue in Count 1 to 4? Or how much money did the defendant derive from the wire frauds at issue in Counts 1 to 4? The jury has to make the finding. That's all. And I think that's really clear from Southern Union. In that case, the amount of the fine depended on the number of days that the company was in violation, but the court also noted that sometimes fines are determined by the amount of the victim's loss or the amount of the defendant's gain, and the jury has to make that finding. So the same has to be true of forfeiture, because forfeiture also depends on the amount of the victim's loss or the defendant's gain, however you want to put it, and it's not found by the jury as one of the elements of the crime itself, and it wasn't found by this jury. So the district court properly denied forfeiture given the absence of a jury finding, which was essential to this punishment. Counsel, do you want to reserve some time for that? Sure. Thank you very much, Your Honor. May it please the court. My name is Matthew Diggs, appearing on behalf of the United States. I'll limit my comments to the issues argued by the appellant, and I want to start with the mail fraud count. As the court is aware, because the Rule 29 motion below did not address this specific argument and was not renewed at the close of evidence, this is reviewed for plain error. The primary error in the appellant's argument is that the appellant mischaracterizes the scheme at issue as one solely of misrepresentations made to Ken Gordon. The scheme at issue here was to cause mod systems to expend corporate funds and for those funds to be routed through a number of intermediaries until they ultimately found their home in the personal benefit of Mark Phillips, both in $15,000 of cash, $25,000 in shares of stock. Does the indictment say that? It does, Your Honor. That is the essence of the scheme, which is set out in the indictment, to defraud mod systems and then for the personal benefit of Mark Phillips, the manner and means of the indictment, to trace that money, the $30,000 for this watch as well as the other $70,000 that came out of mod systems in this first aspect of the scheme and how those wirings came back to benefit Mr. Phillips. So if we agree with you on this, do we not reverse on the money laundering counts? You don't, Your Honor, and the reason is because with regard to this mail fraud, until Mr. Phillips had paid for the watch that he received on January 16th, until that watch had been paid for, his mail fraud scheme is not complete. Are you saying that any mailing, however irrelevant otherwise to a scheme, if it occurs during the temporal period of the scheme, is sufficient to support, is sufficient to qualify under Mays? No, Your Honor, not any mailing, but a mailing that's necessary for the scheme to reach fruition. At the time Mr. Phillips had this watch mailed to him, he had not paid for it. It's a fair inference that had the money not made its way through three intermediaries to Feel Good Watches, Feel Good Watches would have demanded that Mr. Phillips return the watch. Why is that any different from the transfers that supported the money laundering? Because the transfers that supported the money laundering had made its way through intermediaries back to the bank accounts of Mark Phillips, and then he made separate purchases of real estate with that money. The difference is that the intermediaries, the lawyer, Wallace Black, and Feel Good Watches, are necessary to the mail fraud scheme. They're necessary to I thought you told me the whole scheme, as you defined it, was to enrich him in various ways, and wasn't one of the ways he enriched himself, was through those various purchases that were paid for with the defrauded funds. The money laundering purchases? Yes. I think we would be in a different posture if Wallace Black, if the money had gone directly from Wallace Black to buy Mr. Phillips' condominium, or to make his down payment, but that's not what happened. The money came back to Mark Phillips, and the timing is important here. With regard to the $15,000, which goes to the earnest money payment on the money laundering, that money comes out of Maude at the beginning of March. At the beginning of April, it comes to Mr. Phillips' account, and he writes a check for the earnest money payment. The $1.5 million comes out of Maude April 25th, and on May 23rd, Mr. Phillips wires nearly a million dollars for the real estate down payment. So that money had come back to Mr. Phillips' accounts. So it's our position that those accounts do not merge with the underlying scheme, and therefore there's no problem under Santos, because they're not components of that scheme. They're not critical to the scheme's continuing function. Whereas the mailing is very different. If that mailing doesn't occur, and well, I should say, if Feel Good Watches doesn't get paid for that mailing, the mail fraud scheme does not continue to function. That's where we would draw the distinction. I'm still having real problems here. In one situation, he's getting money illegally, fraudulently, and he's using it to make various purchases. And you say the purchases are afterwards, they support the money laundering accounts. In the mail fraud situation, it's the same idea. He's going to use money that he has obtained fraudulently to make a purchase. It's just that the purchase occurs earlier in the scheme and has to be paid for afterwards. So what? I think there's a difference, Your Honor. Mr. Phillips never obtains the $30,000 to pay Feel Good Watches. It never goes to him. Because of the way he sets up this scheme, and we argued to avoid detection, he has the $30,000 go to his personal lawyer, who he tells one thing to. He then has it go to his ex-girlfriend's business account, and then it goes directly to Feel Good Watches. It never comes directly to Mr. Phillips. I think if this money had come directly out. That's all to conceal the scheme, but that has nothing to do with the mailing of the watch. All those things are cover-ups of the scheme, in effect, which may there's competing case laws to whether the cover-up is actually a mailing under Mays or not, but that's not the issue here. This is the mailing of the watch. Yes? It is the mailing of the watch that is charged as an execution of this scheme, but it's charged as an execution of an underlying scheme that involves all these machinations and all this movement of money. It's not necessarily noteworthy that the mailing didn't occur between a victim and a perpetrator, nor is it noteworthy that the mailing itself was not false. Yes, I agree. The timing, we argue, doesn't differentiate this case. The court may imagine that the money had been wired through the same circuit of transfers to Feel Good Watches, and then Feel Good Watches had mailed Mr. Phillips the watch. As long as that money had not come to Mr. Phillips first, we would still have a mail fraud count, because the watch was actually mailed effectively on credit and paid for less than a week later, should not defeat the mail fraud count from our view. I want to turn to the condition of supervised release that's challenged on appeal. It's our position that although a palant reading of this condition of supervised release is a theoretically possible one, the chosen, and what should be followed, is a plausible reading, which would allow this condition to be followed. In Vega, this court found that supervised release condition, this condition associate, is known to have a, both that the condition will be read to have a mens rea component,  it is going to require Mr. Phillips to knowingly violate this condition of supervised release, and also that associational contacts do not violate this condition. Chance associations should not violate this condition. That can apply to this condition where the term frequent is included. It's our view that this requires more than associational chance conduct. The condition prohibits frequenting places where drugs are used, sold, or administered. This brings the conduct that would be punished into conduct that would be purposeful conduct by Mr. Phillips. And I'm not sure... What does that mean? If he goes to the dog park every day, is that frequenting a place that is known to be where drugs are illegally sold? I think we have to go back to the plausible reading, and he will be having regular contacts with his probation officer. There are certain parks that are known to be places where drugs are regularly sold. If Mr. Phillips is concerned that he may run afoul of this, he can certainly contact his probation officer, and will not be found to have violated the condition until he has effectively, knowingly gone to such a place after being warned. Is there any park in Seattle where drugs are not sold? I'm not sure, Your Honor, if there is, but I think there was an interesting question from the court. How else would the probation office write this condition? I don't think appellant counsels... Well, I don't know what it means. When you said purposive, I wasn't sure what you meant. Does that mean having the purpose of going to a place where drugs are known to be sold, or because it's a place where drugs are known to be sold, or does that mean that he's knowingly going to a place where drugs are sold, meaning he's knowingly going to a park knowing that drugs are sold in Seattle parks? If I understood your question, I think the first. I think knowingly, knowing that he was going to a place where... Going with the purpose of being at a place where drugs are? No, he doesn't need to go with that. That's the only purpose he's going there, but knowing that this is a place, a house, a bus, a bus stop, a park, a club, a bar, where drugs are regularly sold. I don't think there's a way to write it any more narrowly. I think the way it's written now gives the court, through its probation officer, some flexibility to work with the defendant here. To carry out what you're just saying, don't we have to add the words, except upon prior authorization from your probation officer? You're saying that the way to solve this problem, which sounds perfectly reasonable, is to have the guy call up his probation officer in advance, but there's nothing on the face of the judgment that requires him to do that. So wouldn't you have to put that language into the provision itself? That he shall not frequent blah, blah, blah, except upon prior express approval of the probation officer, or something like that? That would be one way to do it, Your Honor. I don't think it's necessary because the provision will be required to have a mens rea component. Communications with the probation officer are part of the way to get to a knowing violation. I'm just missing what you mean by mens rea. Does that mean he has to know that? What does that mean? I think it means that he is purposefully going to a park with the knowledge that this is a place where drugs are sold, used, or administered. Well, that means that anybody who goes to the park with his dog. With the knowledge that that park, bus stop, is such a place. Right. But how does that answer things if virtually every park is such a place? So the over broad claim then. I don't think every park is the type of place that's meant under this condition. I understand that there is a reading of the word place that is as broad as a neighborhood, or is as broad as a city. That's not the plausible reading that we would put forward here. So if you wanted to try to draft something that was explicitly narrower, what would you say? I know that's not your primary position, but to give us some help if we feel we need to do that. How would it read? I think it would require some prior notice or prior communication with the probation office, because I think the task to discern place down to a more narrow reading will only fail, because we will only be coming up with new places where drugs are sold, administered, or distributed. So I think the challenge would be to draft the condition such that once Mr. Phillips receives prior notice of an area, either from the probation office, and, of course, before he's found to have violated any of these he's going to have a hearing in court. But I think it would have to be something, as some conditions are written, requiring prior notice, because I think any attempt to become more granular with the term place is going to inevitably fail. What difference does it make here that there was no objection? Does it make any difference? I'm not sure it does. I think if the condition is unconstitutionally vague or overbroad, I'm not sure it makes a difference. Let me turn now to the government's cross appeal, which was the forfeiture issue. Judge Kuhnhauer below denied the government's forfeiture motion essentially for two reasons. One, we were able to discern two reasons. One, because he felt the government hadn't followed the proper procedure. And second, because the judge just didn't think it was necessary in this case. I want to first address the procedural argument. Controlling Supreme Court precedent in the Libretti case states that forfeiture issues are not covered by the Sixth Amendment. The federal rule of criminal procedure 32.2b-5 follows this understanding, and that's the rule that talks about retention of the jury for issues of forfeiture. Retention of the jury is only required where the government is seeking to forfeit specific property. Here the government was not seeking the watches. We weren't seeking to forfeit any specific property. We were seeking a money judgment. Therefore, under this court's precedent, as well as Libretti, the jury does not need to be retained to make that determination. We did submit a 28J letter responding to appellant's arguments with regard to Southern Union, but I will cover them briefly here. Southern Union was expressly limited by its terms to fines. It made no reference that it was in any way limiting or overruling Libretti. Forfeiture is, unlike fines, unlike maximum punishments, an indeterminate sentencing standard. There's no maximum to what, there's no statutory maximum, I should say, to what the court could have found Mr. Phillips was obligated to forfeit. That takes it out of the realm of Southern Union and Apprendi and makes it so that, and supports our argument that the jury need not be retained. Turning to the second complaint of the appellant with, or excuse me, to our second argument as to whether the judge had discretion here, the forfeiture statutes all make quite clear that the judge had no discretion once the government has shown that the money judgment it seeks to forfeit are the amounts of the proceeds. The court recently decided, after Judge Kuhnhauer made his ruling, the court recently decided Newman, which we believe makes it all the more clear that the court does not have discretion to order or to not order forfeiture once the government has made its showing. Unless the court has any further questions, we'd ask the court to affirm all of the convictions and to grant the government's motion for a $100,000 money judgment on forfeiture. Okay, thank you, counsel. Any questions? I think you're done. No questions. As the court recognized, adding a men's rate to this condition does not solve the overbreadth problem, and police officers in Seattle do think of certain entire neighborhoods as known open-air drug markets. Belltown is one of those neighborhoods, and it happens to be the neighborhood in which Mr. Phillips lived prior to his incarceration. Now I'll note also, and I had a footnote about this in my brief, Catherine Beckett, a professor at the University of Washington, has found that certain neighborhoods are targeted for enforcement based on race, which I'm sure is not a surprise, but that also adds a question about which places Mr. Phillips must avoid. The neighborhoods that are targeted for enforcement are the ones most people know of or think of as places where people use or sell drugs, but those also just happen to be the African-American neighborhoods. Must he stay out of those, or because I know that the white neighborhoods involve just as much drug use and would probably tell him that, must he stay out of those? That whole argument wasn't developed factually below, was it? No, I decided it didn't. So I don't see how that's before us, that you're saying that an assertion in a law review article made for the first time on appeal a factual assertion is something that we can consider in determining this issue when there's no factual basis in the record? It's a social science paper by Catherine Beckett. Gosh, not like a typical judicial notice subject. Okay, well, that's fine. I mean, you can believe me or not or take it into account or not, but Belltown is a neighborhood that is known for drug use and drug sales, and that was Mr. Phillips' neighborhood, and he should not be required to stay out of it. As to the forfeiture issue, Southern Union controls, not Libretti. In Southern Union, at pages 2350 to 51, the court said, the amount of a fine is often calculated by reference to particular facts, like the amount of the defendant's gain or the victim's loss. The same is true of forfeiture. This is exactly what Apprendi guards against, judicial fact-finding that enlarges the maximum punishment a defendant faces beyond what the jury's verdict or the defendant's admissions allow. We've had lots of Supreme Court cases where they've told us that they have the prerogative to overrule the earlier cases, that we can't, like, anticipatorily overrule them. Well, I would say that Southern Union abrogates Libretti, and this court is entitled to recognize that and perhaps has the duty to recognize that. I don't think the Supreme Court has to say explicitly, we also overrule Libretti. The reasoning of Southern Union clearly applies. So you can address it. I'm sorry? Just to give you a question for example. A lot of people said that Apprendi overruled Almedares-Torres, and then we have a series of cases saying, no, we can't overrule Almedares-Torres anticipatorily, that that's up to the court. So how can we say that the new case erodes Libretti? Well, I guess you could say it based on the sections I just read. An example I could think of, I suppose, would be Arizona v. Gantt. The Arizona Supreme Court held that that search was invalid over the dissent objection that they didn't have the authority to overrule Belton. The U.S. Supreme Court, of course, later affirmed the Arizona Supreme Court and did not indicate that the Arizona Supreme Court had done anything wrong in reading its opinions and deciding that the search was improper. And I would ask this court to do the same, to recognize that Southern Union controls this case and that Libretti has been abrogated. Thank you. Okay, thank you. Nice argument on both sides. So the case of U.S. v. Phillips shall be submitted, and the court will now take a 15- or 20-minute recess.
judges: Rakoff, Schroeder, Gould